Eduvigis Quiñones Santiago, Appellant, *v.* Industrial Commission of Puerto Rico et al., Respondents.

No. 193. Argued April 15, 1940.—Decided June 12, 1940.

*Virgilio Brunet* and *Miguel A. Casiano* for appellant. *M. León Parra* for the respondent Commission. *George A. Malcolm, Attorney General, Emilio de Aldrey, Assistant Attorney General,* and *Víctor G. Vidal González, Law Clerk,* for the respondent Manager of the State Fund.

Mr. Justice Travieso delivered the opinion of the court.

The petitioner in the present proceeding was employed by José Coll y Vidal, as a jockey for the latter's race horses. For his services he received 15 per cent of any prize which might be awarded to his employer. On December 4, 1938, he obtained a first prize in one of the races held in a certain race track in this city, and collected $22. On the same day, while participating in another race, he sustained the injury which has given rise to the present claim. The Manager of the Fund furnished him with medical assistance and paid

to him an allowance of $5 weekly until March 5, 1939, when he reduced said allowance to $3 weekly.

On May 16, 1939, the petitioner appealed to the Industrial Commission and alleged that, as on the day of the accident his wages amounted to $22, in accordance with the second subdivision of section 3 of Act No. 45 of April 18, 1935, (Session Laws, p. 250), he was entitled ". . to compensation equal to one-half of the wages which he received on the day of the accident . ." On the 16th of this instant January, the commission rendered a decision from which we copy the following paragraphs:

"On December 4, 1938, Eduvigis Quiñones Santiago, while riding as a jockey on a horse belonging to José Coll y Vidal, suffered a fracture of his left leg. Mr. Coll y Vidal is a member of an association of horse owners called 'Club Hípico Insular,' which has taken out a policy with the State Insurance Fund covering the risk of workmen's compensation for industrial accidents to the workmen and employers of each and everyone of the members thereof.

"* * * * * * *

"The Manager of the State Insurance Fund stated under oath that, due to the uncertain character of the salary earned by the jockeys, which depends upon the prizes obtained by the horses they ride and in default of which they receive nothing for their work, their average wages were estimated at $10 weekly when the pool amounted to $25,000 or $30,000 a week; but that due to a setback suffered by the pool and by the horse-racing business in general, they have had to reduce said average wages to the sum of $6 a week, for which purpose the employers, Club Hípico Insular and Asociación Hípica de Puerto Rico, agreed with him that said wages were just and acceptable.

"* * * * * * *

"If no agreement determining the average wage of jockeys existed in view of the uncertain character of the wages received by these workmen, the result would be that the jockeys who suffered injuries, unless they obtained some prize during the day on which they were injured and prior to the accident, would not earn any wages or have any right to compensation or allowance, it being therefore necessary in these cases, as also in those wherein wages are paid to the workmen on the basis of the number of hours of work, that

there should be some agreement like the one entered into between the insurer and the race-horse owner associations, for otherwise at least 90 per cent of the injured workmen would be prejudiced by not receiving any wages on the day of the accident, as it is a fact of general knowledge that every jockey who suffers an injury in consequence of the fall of his mount does not obtain any prize, and therefore his 15 per cent would be reduced to nothing.

"After an examination of the evidence for both parties and a consideration of the prejudice that might result to the jockeys from the nonexistence of an agreement regarding an average wage, the Industrial Commission *holds* that, in accordance with the agreement between the employers and the insurer, the jockeys have only been entitled to an allowance of $5 weekly, that is, 50 per cent of an average wage of $10, and subsequently, in accordance with the modification of said agreement, to an allowance of $3, which is equivalent to 50 per cent of an average wage of $6. In the above- entitled case, at the time this workman suffered the accident, there was in force the original agreement under which the workman was entitled to an allowance of $5 weekly, which was paid to him by the manager up to March 15, 1939, and there should be paid to him the same allowance of $5 up to the date when his medical treatment ceased, instead of the $3 paid by the manager after March 15, 1939."

From that decision the workman has taken the present appeal, and he claims that the commission erred, first, in holding that the workman was only entitled to an allowance of $5 weekly, although on the day of the accident he had received wages amounting to $22, thus violating subdivision 2 of section 3 of Act No. 45 of April 18, 1935 (Session Laws, p. 250); and, second, in holding that the workman was only entitled to collect an allowance of $5 weekly, whereas the Manager of the Fund collected premiums on the amount of $22 earned by the workman on the day of the accident, in accordance with the provisions of the first paragraph of section 25 of the above-cited act.

We shall consider both of these assignments together.

 Notwithstanding the search that we have made, we have been unable to find any case decided by this Supreme Court or by the Supreme Court of any State in the Union

which might be alike or similar to the one at bar, or which might enlighten us as to the determination that should be made in cases of this kind. In spite of this, we are of the opinion that the decision of the commission was substantially just. Subdivision 2, section 3, and the first paragraph of section 25 of the Workmen's Compensation Act, which the appellant claims to have been violated, read as follows:

"Section 3.— * * * * * * *

"1. * * * * * * * *

"2. If the disability is of a temporary or transitory nature, to compensation equal to one-half of the wages which he received or, but for such accident, would have received on the day of the accident, during such times as he is disabled for work, payable at the end of each week. The period of such payment shall in no case exceed one hundred and four (104) weeks; *Provided,* That in no case shall such payments exceed ten (10) dollars or be less than one and one-half (1½) dollars a week; *Provided, further,* That no compensation shall be allowed for the first seven (7) days following the date on which the workman or employee presents himself to the physician for treatment."

"Section 25.—The Manager of the State Fund is hereby authorized, empowered, and directed to assess and levy on every employer of workmen or employees affected by this Act, annual premiums determined in accordance with the preceding section, on the total amount of wages paid by said employer to workmen and employees who were, or would have been, entitled to the benefits of this Act during the year prior to the levying of the premiums, if this Act had been in force; *Provided,* That said premium shall be collected semi-annually, in advance, by the Treasurer of Puerto Rico through internal-revenue collectors and such government officials as the Treasurer may, by regulation, authorize."

The first of these provisions says that the workman shall be entitled to one-half of the wages which he received on the day of the accident. But the fact is that jockeys do not receive any definite salary. Their compensation depends upon the order in which they arrive at the winning post on race days. In the absence of an agreement between the Manager of the State Fund and the Club Hípico Insular,

fixing the average wage received by the jockeys for their services, there would be no basis for computing the compensation of a jockey who, although having been injured, should not have been among the first five to reach the winning post. In such cases, it would have to be concluded that said jockeys would have no right to compensation, which is not the spirit of the Workmen's Compensation Act.

 With regard to the second assignment, the appellant in his brief says that by assessing and collecting the corresponding premium on the sum of $22 received by the petitioner on the day of the accident, the respondent manager treated said sum as the wage received by the former on the basis of which the appellant claims that the insurer is bound to pay him his allowance. The appellant forgets that by virtue of the agreement entered into between Club Hípico Insular and the Manager of the State Fund, fixing an average wage, allowances are paid by the manager not only to the injured jockeys who are among the first five to arrive with their horses at the winning post, but also to those who, but for the agreement, would have no right to receive anything, due to the laggard position which they occupied in relation to those who reached the winning post ahead of them.

The decision appealed from must be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.